## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

SYSCO MACHINERY CORP.,
　　　　　　　Plaintiff,
　　　v.
CYMTEK SOLUTIONS, INC., and
CYMMETRIK ENTERPRISE CO. LTD.,
　　　　　　　Defendants.

Civil Action No. 1:22-cv-11806-LTS

## RESPONSE TO SYSCO'S EMERGENCY MOTION FOR
## AN EX PARTE TEMPORARY RESTRAINING ORDER
## AND/OR A PRELIMINARY INJUNCTION

CYMTEK SOLUTIONS, INC.
By its attorneys

/s/   Kevin Tottis
Barbara A. Fiacco (BBO #633618)
Allison L. Anderson (BBO #687662)
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000 (telephone)
(617) 832-7000 (facsimile)
BFiacco@Foleyhoag.com
Alanderson@foleyhoag.com

Kevin Tottis (admitted Pro Hac Vice)
Max Stein (admitted Pro Hac Vice)
TottisLaw
401 N. Michigan Avenue
Suite 530
Chicago, IL 60611
(312) 527-1400 (telephone)
(312) 589-7192 (facsimile)
ktottis@tottislaw.com
mstein@tottislaw.com

Dated: December 19, 2022

# TABLE OF CONTENTS

I.   The History of Sysco's Half-Truths..................................................................... 2

   B.   The Omitted Unsuccessful Efforts In North Carolina. ...................................... 3

   D.   The Family Dynamic......................................................................................... 7

II.   The Court Does Not Have Jurisdiction Over This Dispute. .............................. 8

   A.   This Court Does Not Have Personal Jurisdiction Over Cymtek................... 8

   B.   The Court Lacks Subject Matter Jurisdiction Over Sysco's Copyright and Trade
   Secret Claims. .................................................................................................... 10

      2.   The extraterritorial effect of DTSA is not available in this case. .......... 12

III.   SYSCO cannot satisfy its burden TO DEMONSTRATE THAT the *EX parte* relief it
obtained SHOULD be extended. .............................................................................. 14

   A.   Sysco Failed To Show Likelihood Of Success On The Merits. ................... 14

      1.   Sysco has failed to adequately identify its trade secrets..................... 14

      2.   Sysco has no basis for its statements about Taiwanese law. ............... 16

   B.   Sysco Has Not, And Cannot, Establish That It Will Suffer Irreparable Harm........ 18

      1.   Sysco's delay belies irreparable harm. ............................................... 18

      2.   Any harm can be quantified. ................................................................ 19

   C.   The Balance Of The Equities Favors Cymtek. ........................................... 20

   D.   Continuing The Injunction Is Not In The Public Interest. ......................... 20

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................ 12

*Branyan v. Southwest Airlines Co.*, 105 F.Supp.3d 120 (D. Mass. 2015) .................................... 12

*CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 850 (1st Cir. 1985) ........................................ 6, 16

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ............................................ 18

*EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 248 (1991) ............................................ 10

*Feist Publ'ns, Inc. v. Rural Tel. Serv.Co.*, 499 U.S. 340, 344 (1991) .................................... 5

*Forest River, Inc. v. Heartland Recreational Vehicles, LLC*, 753 F.Supp.2d 753, 758-59 (N.D. Ind. 2010).................................................................................. 5

*Gordo-González v. United States*, 873 F.3d 32, 35 (1st Cir. 2017) ................................ 10, 12

*Gusler v. Fischer*, 580 F. Supp. 2d 309, 315 (S.D. N.Y. 2008)...................................... 5

*IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002)................................ 14

*Impression Products, Inc. v. Lexmark Intern., Inc.*, 581 U.S. 360 (2017) ............................ 11

*KEMA , Inc. v. Koperwhats,* 658 F. Supp. 2d 1022, 1031 (N.D. Cal. 2009) ........................ 6, 16

*Levitin v. Sony Music Entertainment*, 101 F.Supp.3d 376, 384 (S.D.N.Y. 2015) ...................... 12

*Madison v. Cruz*, 393 F.Supp.3d 135, 137, fn. 2 (D. Mass 2019) .................................... 9

*Maher v. Hyde*, 272 F.3d 83, 86 (1st Cir. 2001) .................................................... 3

*Matos ex rel. Matos v. Clinton School Dist.*, 367 F.3d 68, 73 (1st Cir. 2004)........................ 19, 20

*McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011) .............................................. 9

*Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247, 255 (2010) .................................. 10

*Music Sales Ltd. v. Charles Dumont & Son, Inc.*, 800 F.Supp.2d 653 (D.N.J.2009) .................... 12

*NACM-New England, Inc.*, 927 F.3d 1, 5 (1st Cir. 2019).............................................. 19

*NBA Props. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990) ................................................ 15

*Palmer v. Braun*, 376 F.3d 1254 (11th Cir.2004).................................................... 11

*Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412, 415 (7th Cir. 2008) .............. 15

*Public Service Co. of New Hampshire v. Town of West Newbury*, 835 F.2d 380, 383 (1st Cir. 1987)...................................................................................... 19

*Puerto Rico Hosp. Supply, Inc. v. Boston Scientific Corp.*, 426 F.3d 503, 507 (1st Cir. 2005) ... 19

*Quality King Distributors, Inc. v. L'anza Research Intern., Inc.*, 523 U.S. 135, 154 (1998) ....... 11

*RJ Control Consultants, Inc. v. Multiject, LLC,* 981 F.3d 446, 455 (6th Cir. 2020 ...................... 5

*Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ...................................................... 15

*Sheldon v. Metro–Goldwyn Pictures Corp.*, 106 F.2d 45, 52 (2d Cir.1939) ............................... 12

*State of Maine v. Fri*, 483 F.2d 439, 441, n. 1 (1st Cir. 1973) ......................................................... 1

*Subafilms, Ltd. v. MGM–Pathe Communications*, 24 F.3d 1088, 1091 (9th Cir.1994) ................ 11

*TLS Management and Marketing Services, LLC v. Rodríguez-Toledo*, 966 F.3d 46, 54
(1st Cir. 2020) ........................................................................................................................ 14

*Tough Traveler Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) ................................. 18

*Ultraflo Corporation v. Pelican Tank Parts, Inc.,* 845 F.3d 652, 658 (5th Cir. 2017) .................. 5

*United Dictionary Co. v. G. & C. Merriam Co.*, 208 U.S. 260, 264 (1908) ................................ 11

*Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir.1988) ................................ 11, 12

*Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009) .............................. 19

*Voice of the Arab World v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 34 (1st Cir. 2011) ......... 18

*Walden v. Fiore*, 571 U.S., 277 283–84 (2014) ............................................................................. 8

## Statutes

17 U.S.C. § 101 .............................................................................................................................. 5

17 U.S.C. § 102 .............................................................................................................................. 5

17 U.S.C. § 104 .............................................................................................................................. 5

17 U.S.C. § 408 .............................................................................................................................. 5

17 U.S.C. § 411 .............................................................................................................................. 6

18 U.S.C. § 1831, *et seq* ............................................................................................................... 12

18 U.S.C. § 1837 ........................................................................................................................... 13

## Other Authorities

*Bassett v. Jensen*, 2019 WL 5457771, *1
(D. Mass., 10/24/2019) ......................................................................................................... 18

*Beijing Neu Cloud Oriental System Technology Co., Ltd. v. IBM, Inc.*, 2022 WL 889145, *4
(S.D.N.Y. March 25, 2022) ................................................................................................... 13

*Elsevier Ltd. V. Chitika, Inc.*, No. 11-10026, 2011 WL 6008975, at *3
(D. Mass. Dec. 2, 2011) ........................................................................................................ 11

Fed. R. Civ. P. 44.1 ...................................................................................................................... 16

Fed. R. Civ. P. 65 ......................................................................................................................... 15

*Media3 Technologies, LLC v. Mail Abuse Prevention System, LLC,* 2001 WL 92389, *9 (D.
Mass. Jan. 2, 2001) ............................................................................................................... 18

*MMAS Research LLC v. Charité*, 2022 WL 17218074, * (C.D. Cal. Nov. 4, 2022) .................... 12

*Palmer/Kane LLC v. Houghton Mifflin Harcourt Pub. Co.*, 2014 WL 183774 (2014 WL 183774,
*3 (D. Mass. Jan. 16, 2014) .................................................................................................. 11

*ProV International Inc. v. Lucca*, 2019 WL 5578880, *3
    (M.D. Fla. Oct. 29, 2019) ................................................................................... 13

*Sutra, Inc. v. Iceland Exp.*, 2008 WL 2705580, at *3
    (D. Mass. July 10, 2008)................................................................................... 14

*Trust Safe Pay, LLC v. Dynamic Diet, LLC*, 2017 WL 3974949, *8
    (D. Mass Sept. 8, 2017) ............................................................................ 14, 15

**Treatises**

4 PATRY ON COPYRIGHT § 11:13............................................................................ 5

4 PATRY ON COPYRIGHT § 13:48............................................................................ 5

For the better part of a year, Sysco repeatedly tried to obtain temporary relief from different courts based on incomplete information and misrepresentations. In October 2022, amid allegations of unethical conduct and the denial of a TRO nearly identical to the one granted here, Sysco voluntarily dismissed the case it filed in federal court in North Carolina and refiled it in this Court. Sysco's subsequent *ex parte* presentation to this Court, which resulted in the current temporary restraining order, omitted material facts, and misstated the law and the procedural posture of decisions in other courts. This included the omission of any mention of the events in North Carolina, the fact that the Taiwanese court decision upon which Sysco relied also was the result of an *ex parte* proceeding and that, a few weeks after it issued its *ex parte* order, the Taiwanese court denied Sysco further relief (also sought *ex parte*) finding Sysco had not properly identified its trade secrets. Cymtek is confident that if Sysco had presented all of this to the Court, it never would have granted the extraordinary relief sought by Sysco.

This Court should dissolve the TRO immediately.[1] As discussed below, this Court does not have jurisdiction over this matter. Moreover, when the more complete record is considered, it is clear Sysco never had a basis for proving likelihood of success on the merits, much less irreparable harm, especially given its year-long delay in bringing this action and the fact that any injury it could claim would be resolved with money damages. Should the Court permit Sysco to proceed, then, it can do so in the ordinary course of a lawsuit rather than through *ex parte* assaults based on lawyer conjecture and an incomplete retelling of a foreign country's *ex parte* temporary orders and laws.

---

[1] Citing Wright and Miller, the First Circuit has noted that a restraining order may be extended beyond 20 days (currently 28 days), "if the moving party has exercised good faith in seeking the preliminary injunction hearing, but has been unsuccessful, and if the danger of irreparable injury continues." *State of Maine v. Fri*, 483 F.2d 439, 441, n. 1 (1st Cir. 1973). Given the conduct described below, it is hard to see any good faith in Sysco's actions. Moreover, there is no showing of an irreparable injury, given Sysco's (undisclosed) delay and the sufficiency of money damages for any injury.

The TRO already has had real and irremediable effects on Cymtek. Just last Friday, citing the TRO entered in this case, a Cymtek customer suspended a $5 million order. This not only reflects a devastating loss of revenue for Cymtek, but the full repercussions, including whether it will ever be able to repair that relationship, remain an open question. To avoid any further instances like this, the Court should now promptly dissolve the TRO.

## I.     THE FULL HISTORY OF SYSCO'S HALF-TRUTHS.

### A.     The Omitted Proceedings And Findings In Taiwan.

Sysco, a Taiwanese company, came to this Court *ex parte* and asked the Court to bar the legitimate sales of the products of another Taiwanese company, Cymtek, based solely on alleged wrongful activity that occurred exclusively in Taiwan. Sysco's primary basis for its claims of the wrongful activity is an unauthenticated, uncertified translation of a Taiwanese court order that purports to temporarily bar the use of certain files alleged to have been taken from Sysco.[2] What Sysco omitted, however, is that the Taiwanese court order that figured so prominently at this Court's *ex parte* hearing was also obtained *ex parte.* (Dkt. 1, Ex. 44 (the "*Ex Parte* Taiwanese Order").[3]) Moreover, the *Ex Parte* Taiwanese Order doesn't identify a single alleged "trade secret." Despite Sysco's current assertions of "irreparable harm," last spring it failed to seek to enforce the *Ex Parte* Taiwanese Order within 30 days as required under Taiwanese law. As a result, the *Ex Parte* Taiwanese Order is now unenforceable. (*See* Ex. A, Wang Decl., ¶ 40.)

Sysco also omitted that last spring, Sysco instead, again proceeding *ex parte*, asked the

---

[2] In reality, Cymtek used none of the referenced files in its products. (*See* Exhibit A, Declaration of Yi-Shou (Eric) Wang (the "Wang Declaration"), ¶ 39.)

[3] Cymtek also disputes the accuracy of the translation in the *Ex Parte* Taiwanese Court Order, including certain references to "trade secrets." Given time pressures Cymtek has not been able to obtain an independent, certified translation. At the same time, there is no reasonable basis for the Court to rely on Sysco's uncertified, unauthenticated document since Sysco has had months to obtain a proper translation.

same Taiwanese court to enter an order "for perpetuation of evidence" and this time the court rejected Sysco's request. Even without input from Cymtek, the court found that Sysco failed to specify its trade secrets, just as it has failed to do here. Instead, after exhaustively recounting Sysco's allegations the court found that, again, Sysco merely provided "vague" lists of alleged trade secrets and concluded that "[n]aturally, it is difficult to find that the applicant has fulfilled its duty to specify the trade secret (information)." (Exhibit B, April 13, 2022 Intellectual Property and Commercial Court Civil Ruling, Section III(1)2. (Certified English Translation, p. 6).) It also noted that Sysco had only "put forward subjective and abstract speculations" about the contents of the files it claims Cymtek took. (*Id.*)

**B.     The Omitted Efforts In North Carolina.**

Sysco also omitted that in August of this year, relying on that same unenforceable *Ex Parte* Taiwanese Order, Sysco filed a virtually identical action against Cymtek, a company named DCS and others in federal court in North Carolina. (Ex. C, NC Dkt. 1.[4]) Sysco failed to tell this Court that, after hearing from DCS—the first time Sysco's opposition had the opportunity to respond to its claims—the North Carolina court flat-out denied its TRO request. (Ex. E, NC Dkt. 26.)

At the TRO hearing before this Court, Sysco told the Court: "We have seen evidence that they're out there in trade shows selling the product and trying to the sell the product across the United States."[5] (Ex. F, November 16, 2022 Motion Hearing Tr. (the "11/16/22 Transcript"), 11:22-25.) What Sysco failed to mention, however, is that those trade show conversations took

---

[4] The Court can take judicial notice of the North Carolina court filings, referred to as "NC Dkt. ##," attached as exhibits to this Opposition. *Maher v. Hyde*, 272 F.3d 83, 86 (1st Cir. 2001). For the Court's ease, a printout of the entire docket is attached as Exhibit D.

[5] Just who the "they" are is unclear, but there is no evidence that Cymtek attended any U.S. trade shows selling product.

place between one of Sysco's *lawyers* and defendant DCS's employee *without* DCS's counsel present. When the North Carolina court learned of this improper conduct, it issued a protective order barring Sysco's counsel from "…further contact with any employees or representatives of DCS without its counsel present." (Ex. G, NC Dkt. 25.) Sysco then voluntarily withdrew the declaration containing the improper evidence promising never to use the evidence in "this [*i.e.,* the North Carolina] litigation." (Ex. H, NC Dkt. 29.) While the North Carolina court weighed DCS' monetary sanctions request, Sysco voluntarily dismissed its lawsuit (Ex. I, NC Dkt. 31-32) and, three days later, brought this suit (including nearly identical claims against Cymtek) before this Court, only now with DCS no longer included as a party. And, freed of its promise not to use the evidence in the North Carolina litigation, Sysco presented it here.

In short, on October 21, 2022 (incidentally, over a year after Sysco itself alleges it became aware of the underlying facts (Dkt. 1, ¶ 83 and Dkt. 1-40)), Sysco came before this Court *ex parte* and asked the Court to employ one of the most extreme tools a federal court has at its disposal in a civil action under the guise of "maintaining the status quo" even though Sysco knew that the actual "status quo" in North Carolina, Taiwan and the rest of the world meant there were, in fact, no restraints on Cymtek.

### C.   The Omitted Law.

Information about its missteps in the other actions is not all that Sysco withheld from this Court. A substantial portion of Sysco's Complaint and Motion are based on the proposition that because Sysco registered its copyrights in a series of technical drawings, any use of the process or other ideas reflected in those drawings violates Sysco's copyright. That is inaccurate. U.S. copyright law protects only expression, not ideas. This "idea/expression dichotomy" is the "most fundamental axiom of copyright law." *Feist Publ'ns, Inc. v. Rural Tel. Serv.Co.*, 499 U.S. 340,

344 (1991).[6] A copyright in technical drawings no more gives Sysco protections over the subject matter of the drawings than a picture of a sunset gives the photographer rights in the sun. Moreover, to the extent this bedrock principle of copyright law is not clear enough, where, as here, the subject matter of the picture involves technical material, the Copyright Act expressly prohibits the very type of copyright claim Sysco is offering:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

17 U.S.C. § 102(b). Time and again, courts have rejected attempts to create process rights under a technical drawing's copyright. "The exclusive right to *use* the drawings to reconstruct any idea contained therein sounds in patent law rather copyright." *RJ Control Consultants, Inc. v. Multiject, LLC,* 981 F.3d 446, 455 (6th Cir. 2020).[7]

Sysco should know all of this. Even if it didn't do its homework, the copyright registration upon which it attempts to rely spells out the limits of the copyright clearly and unambiguously:[8] "Copyright and registration based on only the deposited technical drawings; **no**

---

[6] That principle is codified at 17 U.S.C. § 102(a), providing that copyright protection applies only to "original works of authorship fixed in any tangible medium of expression…." (emphasis added)

[7] *See also Ultraflo Corporation v. Pelican Tank Parts, Inc.,* 845 F.3d 652, 658 (5th Cir. 2017) ("Although the Copyright Act provides the owner of such a drawing the exclusive right to reproduce the drawing itself, it does not grant the exclusive right to use the drawing to make the useful article depicted."); *Gusler v. Fischer*, 580 F. Supp. 2d 309, 315 (S.D. N.Y. 2008); *Forest River, Inc. v. Heartland Recreational Vehicles, LLC*, 753 F.Supp.2d 753, 758-59 (N.D. Ind. 2010); 4 PATRY ON COPYRIGHT § 11:13 & 13:48.

[8] Sysco bandies about the copyright registrations themselves like they actually mean something in the context of this lawsuit. They don't. Under Sections 101 and 104 of the Copyright Act, copyright exists upon creation both in the United States and throughout the world. Copyright registration "is not a condition of copyright protection." 17 U.S.C. § 408(a). Although a copyright registration gives rise to certain presumptions and is a necessary prerequisite to sue for infringement of "the copyright in any United States work," registration is not necessary to sue on works, like the technical drawings at issue here, created outside the United States. 17 U.S.C. § 411(a).

**copyright and registration for any useful article depicted in the registered work.** 17 U.S.C. 101, 102(a), and 113." (Dkt. 1-29 (emphasis added).) Plaintiffs have a duty to do their homework, especially where, as here, Sysco demanded *ex parte* that this Court use its power to grant an extraordinary remedy shutting down Cymtek's business without any for Cymtek's interests.

Sysco's biggest omission, however, is its trade secrets claim. Just as in Taiwan, nowhere in its Complaint does Sysco allege the existence of or point to a single actual trade secret, and certainly not a trade secret used or disclosed in the United States. The supposed trade secrets definitely are not contained in the Complaint or in the copyrighted technical drawings sprinkled throughout since nothing was filed under seal. Trade secrets aren't trade secrets if they're not a secret.[9] *CVD, Inc. v. Raytheon Co.*, 769 F.2d 842, 850 (1st Cir. 1985). To ferret out the alleged trade secrets as part of a good-faith effort to limit the scope of an ongoing injunction, Cymtek's counsel asked Sysco's counsel to identify them. The response was just as vague as the claims in Sysco's Complaints here and in Taiwan, with Sysco claiming that Cymtek's ILRC machines "misappropriate several of Sysco's trade secrets, including at least machine software, know how, tuning software, schematics, etc." The complete exchange is attached as Exhibit J.

There's a reason Sysco has been so cagey about its trade secrets in every forum in which it has appeared: They don't exist. Now, for the first time, this Court can finally hear from Cymtek. As the declaration of Eric Wang makes clear, Sysco is an old-school manufacturing company who, 19 years ago, reverse engineered another company's product in about six months

---

[9] In addition to filing the technical drawings in the publicly accessible court dockets in this action and in the North Carolina action, Sysco disclosed its alleged trade secret information in the drawings to the public by registering them with the Copyright Office which effectively extinguished its right to protect that information from misappropriation as a trade secret. See *KEMA , Inc. v. Koperwhats,* 658 F. Supp. 2d 1022, 1031 (N.D. Cal. 2009) (dismissing  trade secret claim where after party disclosed the allegedly trade secret information to the U.S. Copyright Office without redaction).

to create its RDC machines. (Ex. A, Wang Decl., ¶¶ 9-10.) To the extent it truly believed it had any proprietary information at all, Sysco took no steps to protect it and, in fact, its employees routinely used their personal USB drives to download company information in the course of their daily work activities without any restriction on use. (*Id.*, ¶¶ 11-17.) On top of that, Cymtek's intelligent laser rotary cutting ("ILRC") machine (the machine at issue) was independently developed by Cymtek including its software, 3-D CAD tools, layout, electronic circuit elements, power circuit, safety circuit and laser circuits. (*Id.*, ¶¶ 27-28.)

      **D.**    **The Family Dynamic.**

    Finally, there is one other wrinkle: this is largely a family dispute. Eric Wang, Eric's father Dexter, Eric's half-sister and her husband all are owners in Sysco. (Ex. A, Wang Decl., ¶¶ 5, 19.) When Eric could not persuade his family members to change their outmoded business practices, he told them he was leaving. (*Id.*, ¶¶ 19-20, 24-25.) Dexter responded by wishing Eric success. (*Id.*, ¶ 24.) Only later, in March 2022, did Sysco decide to sue Eric and his new employer in Taiwan.

    As discussed below, this Court does not have jurisdiction over this matter, but it is also reasonable to question whether a court in Boston should even be weighing in on a Taiwanese family dispute exclusively involving Taiwanese companies arising out of activities that occurred in Taiwan, governed by Taiwanese law involving a Taiwanese court decision written, of course, in Chinese.[10]

    The sad truth is that based on Sysco's material omissions, half-truths and misstatements of law and facts, the TRO barred a legitimate competitor from entering the U.S. marketplace.

---

[10] Although Cymtek reserves the right to file its own motion, it adopts the *forum non conveniens* arguments in CymMetrik's motion. (Dkt. 30.)

The TRO also permitted Sysco to obtain this extraordinary relief without posting a bond, even though more than a year had passed since Sysco knew the underlying facts. As should be clear by now, the TRO never should have been granted. Nor should it be extended now. Instead, this Court should immediately dissolve the TRO and provide Cymtek with any other relief it deems appropriate.

## II.   THE COURT DOES NOT HAVE JURISDICTION OVER THIS DISPUTE.

Sysco had the burden of proving this Court's jurisdiction over Cymtek. It hasn't come close to meeting that burden.

### A.   This Court Does Not Have Personal Jurisdiction Over Cymtek.

Sysco's complaint alleges only specific personal jurisdiction but fails to allege facts sufficient to invoke that jurisdiction. For specific personal jurisdiction to attach, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction. *Walden v. Fiore*, 571 U.S., 277 283–84 (2014). Here, Sysco's complaint merely alleges that Cymtek placed the accused products into the stream of commerce, aware that the product ***might*** make its way into Massachusetts, and "either directly or through an agent, transacted business . . . in the Commonwealth of Massachusetts, including by attempting to usurp Sysco's business transaction with Freyr Battery, which operates its technology center in Boston." (Dkt. 1, ¶¶ 18-19.) Those allegations are insufficient.

Again, Sysco omitted key facts when it addressed this Court *ex parte.* As Sysco should know, Freyr Battery did not open its Boston technology center until August 2022.[11] Yet, Sysco

---

[11] The Court can take judicial notice that Freyr announced in a press release the opening of its Boston technology center in August 2022. *See* https://ir.freyrbattery.com/ir-news/press-releases/news-details/2022/FREYR-Battery-Establishes-Technology-Center-in-Boston/default.aspx, last visited December 18, 2022. *Madison v. Cruz*, 393 F.Supp.3d 135, 137, fn. 2 (D. Mass 2019) (court can take judicial notice of press releases where accuracy is not reasonably subject to question).

bases its jurisdictional allegations regarding contacts with Freyr Battery on events that occurred in 2021. Those contacts occurred in Europe and resulted in products being shipped to Europe (specifically, Norway). (*See* Dkt. 1-19, at pp. 8 & 23; *see also* Ex. A, Wang Decl., ¶ 45.) Despite a lengthy colloquy with the Court at the *ex parte* hearing on Cymtek's presence Massachusetts, Sysco never mentioned this fact. (Ex. F, 11/16/22 Tr. at 4:18-8:13, 9:7-10:18.)

Beyond those allegations, Sysco has alleged nothing that ties Cymtek to Massachusetts. Sysco does not allege that Cymtek ever traveled to, conducted activities within, contacted anyone in or sent anything or anyone to Massachusetts. (Ex. A, Wang Decl., ¶ 46.) Although Cymtek offers its ILRC products to DCS, a broker with an office in North Carolina, DCS makes the decision as whether it should offer its customers Cymtek products or other companies' products in various states and abroad. (*Id.*, ¶ 44-45.) In other words, Cymtek does not determine whether a product order would end up in Massachusetts.

The Supreme Court rejected a similar claim of specific jurisdiction in *McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). There, like here, the defendant had no direct contacts with the forum state (New Jersey) but offered products through a distributor, which could potentially sell them anywhere in the United States.[12] In a plurality opinion, Justice Kennedy explained that "it is the defendant's actions not his expectations, that empower a state's court to subject him to judgment" and "it is not enough that the defendant might have predicted that its goods will reach the forum state." *Id*. at 882-83. To the extent Cymtek has had any regular contact with anyone in

---

[12] Unlike in *McIntyre* where four products found their way into the forum state, no Cymtek product has ever shipped to Massachusetts. Cymtek is aware that DCS has apparently taken an order for a Cymtek ILRC product from a Cambridge-based company (not Freyr Battery), but the sale has not been consummated and the product has not been shipped to Massachusetts. (*See* Ex. A, Wang Decl., ¶ 46.) But even if it had, specific jurisdiction should not be exercised based on a single sale in a forum, even when the manufacturer knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states. *McIntyre*, 564 U.S. at 888. (Breyer, J., concurring in judgment))

the United States, it is with DCS which is located in North Carolina, but as explained above, Sysco voluntarily left that jurisdiction once the North Carolina court denied its request for TRO and entered the protective order.

**B.    The Court Lacks Subject Matter Jurisdiction Over Sysco's Copyright and Trade Secret Claims.**

A plaintiff seeking to sue in a federal forum bears the burden of establishing subject-matter jurisdiction. *Gordo-González v. United States*, 873 F.3d 32, 35 (1st Cir. 2017). At no point has Sysco made any attempt to meet this burden. Its failure dooms both its claims under the Copyright Act and DTSA, since neither applies extraterritorially under the facts of this case.

Under long-standing federal law, unless a contrary intent appears on the face of a statute, the statute applies "…only within the territorial jurisdiction of the Unites States." *EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 248 (1991). Congress is presumed to regulate domestic and not foreign matters. *See Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247, 255 (2010). Unless Congress clearly expresses its intent "to give a statute extraterritorial effect, the Court must presume it is primarily concerned with domestic conditions." *Id.* (quoting *Arabian Am. Oil Co*, 499 U.S. at 248). When a statute gives no clear indication of an extraterritorial application, it has none. *Morrison*, 561 U.S. at 255. Despite these long-standing, clear standards, Sysco has provided this Court with nothing upon which it could base the extraterritorial application of the Copyright Act or DTSA.

**1.    The Copyright Act has no extra territorial application.**

Time and again, the Supreme Court has stated that copyright laws do not apply extraterritorially. *Impression Products, Inc. v. Lexmark Intern., Inc.*, *581 U.S. 360* (2017) (copyright protections "do not have any extraterritorial operation"); *Quality King Distributors, Inc. v. L'anza Research Intern., Inc.*, 523 U.S. 135, 154 (1998) ("provisions of Title 17 do not

apply extraterritorially unless expressly so stated") (Ginsberg, J, concurring); *United Dictionary Co. v. G. & C. Merriam Co.*, 208 U.S. 260, 264 (1908) (copyright notice provision does not apply abroad because U.S. copyright laws have no "force" beyond the United States' borders). Courts addressing allegations of infringement abroad have uniformly held that such infringement is not actionable here. *Subafilms, Ltd. v. MGM–Pathe Communications*, 24 F.3d 1088, 1091 (9th Cir.1994) (*en banc*); *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 73 (2d Cir.1988) (same); *Elsevier Ltd. V. Chitika, Inc.*, No. 11-10026, 2011 WL 6008975, at *3 (D. Mass. Dec. 2, 2011) (dismissing copyright infringement action where alleged activities all occurred abroad); *Palmer/Kane LLC v. Houghton Mifflin Harcourt Pub. Co.*, 2014 WL 183774 (2014 WL 183774, *3 (D. Mass. Jan. 16, 2014) ("well established that copyright laws generally do not have extraterritorial application").[13]

Courts repeatedly have held that subject matter jurisdiction under the Copyright Act requires domestic infringement. "It is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action." *Palmer v. Braun*, 376 F.3d 1254 (11th Cir.2004) (citing *Sheldon v. Metro–Goldwyn Pictures Corp.*, 106 F.2d 45, 52 (2d Cir.1939)); *Update Art*, 843 F.2d at 72-73 (evaluating extra-territorial limitation to determine whether the district court had subject matter jurisdiction over copyright claim); *Levitin v. Sony Music Entertainment*, 101 F.Supp.3d 376, 384 (S.D.N.Y. 2015) (district courts have no subject matter jurisdiction over infringement occurring

---

[13] This general rule is subject to the limited "predicate act exception. *Update Art*, 843 F.2d 67, 72-73 (2d Cir. 1988); *Elsevier*, 2011 WL 6008975, at *3-4. Under the exception, a defendant may be liable for copyright infringement occurring abroad only if the plaintiff establishes the defendant first violated the Copyright Act within the United States which then led to further reproduction abroad. *Id.* Sysco has made no such allegations and the exception does not apply.

outside of the United States); *Music Sales Ltd. v. Charles Dumont & Son, Inc.*, 800 F.Supp.2d 653 (D.N.J.2009) (same).[14]

Sysco bears the burden of proving that this case is properly in federal court. *Gordo-González*, 873 F.3d at 35; *MMAS Research LLC v. Charité*, 2022 WL 17218074, * (C.D. Cal. Nov. 4, 2022). It simply cannot do so here since all of the supposed infringing activity occurred in Taiwan. The only copyright activity it alleges occurring in the United States arises out of Sysco's claim that the machine at issue somehow embodied its copyrighted drawings. While a court may be permitted to rely on well-pleaded facts, it is not bound to accept meritless legal conclusions. *Branyan v. Southwest Airlines Co.*, 105 F.Supp.3d 120 (D. Mass. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### 2.    The extraterritorial effect of DTSA is not available in this case.

Similarly, Sysco has also failed to demonstrate the Court's subject matter jurisdiction over its trade secrets claim under the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq*. Its entire claim arises out of alleged misappropriation of trade secrets from Sysco's offices in Taiwan through acts allegedly committed in Taiwan. There is no proper allegation of any misappropriation or use of the purported trade secrets in the United States. Unlike the Copyright Act, DTSA does have some limited extraterritorial effect, but its reach cannot extend to the circumstances in this case. Rather, DTSA applies to activity outside the United States only if:

> (1) the offender is a natural person who is a citizen or permanent resident alien of the United States, or an organization organized under the laws of the United States or a State or political subdivision thereof; or (2) an act in furtherance of the offense was committed in the United States.

---

[14] While most courts have treated lack of extraterritoriality as a question of subject matter jurisdiction, the Federal Circuit held that issue goes to the merits. *Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008). If that is the case, Sysco's copyright claim can be dismissed on substantive grounds.

18 U.S.C. § 1837. Here, Sysco has not alleged any activity in the United States that would fall within these limitations. Nor can it.

The two defendants in this case are Taiwanese companies located in Taiwan. They have no offices or other presence in the United States. (*See, e.g.*, Ex. A, Wang Decl., ¶ 46.) Sysco has not put any allegations before the Court of any acts committed in the United States in furtherance of the alleged misappropriation and use of Sysco's trade secrets. Indeed, the alleged downloading of computer files purportedly containing Sysco's trade secrets by former Sysco employees is claimed to have occurred at Sysco's offices in Taiwan. The alleged disclosure of trade secrets to Cymtek, CymMetrik and/or their parts suppliers all are claimed to have occurred in Taiwan or elsewhere overseas.[15] The design and manufacturing of Cymtek's ILRC machines is done in Taiwan, not the United States.

In short, there is not a single activity involving the alleged acquisition, disclosure or use of Sysco's trade secrets that occurred in the United States. Consequently, DTSA simply cannot apply here. *See*, *e.g., Beijing Neu Cloud Oriental System Technology Co., Ltd. v. IBM, Inc.*, 2022 WL 889145, *4 (S.D.N.Y. March 25, 2022) (dismissing a DTSA action involving two Chinese parties, where "there is nothing to suggest that a discrete act in furtherance of the misappropriation took place in the United States"); *ProV International Inc. v. Lucca*, 2019 WL 5578880, *3 (M.D. Fla. Oct. 29, 2019) (no extraterritorial application of DTSA where complaint contained no allegations of acts in the United States).

---

[15] Sysco's brief in support of its TRO motion (Dkt. 5, p. 14) states that Cymtek's ILRCs were manufactured at CymMetrik's An-Nan plant.

III.   **SYSCO CANNOT SATISFY ITS BURDEN TO DEMONSTRATE THAT THE *EX PARTE* RELIEF IT OBTAINED SHOULD BE EXTENDED.**

Sysco bears the burden of showing that the Court should continue the effect of the extraordinary relief that it granted based on Sysco's incomplete, *ex parte* presentation. It simply cannot satisfy that burden.

A.   **Sysco Failed To Show Likelihood Of Success On The Merits.**

Obviously, a lack of jurisdiction translates into a lack of success on the merits. Should the Court decide it has jurisdiction over this matter, however, Sysco's substantive claims all fail. As discussed above, Sysco's copyright claims simply have no legitimate basis in law or fact. Similarly, its trade secret claims fail on their face.[16] To the extent the lack of merit isn't clear, Cymtek's additional evidence should alleviate any concerns.

1.   **Sysco has failed to adequately identify its trade secrets.**

A plaintiff asserting trade secret misappropriation must identify those trade secrets with specificity. "[A] plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition of a trade secret." *TLS Management and Marketing Services, LLC v. Rodríguez-Toledo*, 966 F.3d 46, 54 (1st Cir. 2020) (quoting *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002)); *see also Trust Safe Pay, LLC v. Dynamic Diet, LLC*, 2017 WL 3974949, *8 (D. Mass Sept. 8, 2017) (dismissing trade secret claim where plaintiff failed to adequately identify the trade secrets at issue); *Sutra, Inc. v. Iceland Exp.*, 2008 WL 2705580, at *3 (D. Mass. July 10, 2008) ("The burden is on the party claiming trade secret status to identify the specific trade secrets at issue 'with clarity that can be understood by a lay person and distinguish what is protectable from that which is not.'"). That foundational requirement certainly isn't any less in the context of a TRO or

---

[16] Sysco says that its supplemental state law claim follows federal law (Dkt. 5, p. 16), so it, too, fails.

preliminary injunction; before the Court divests a defendant of its property rights—even temporarily—the Court and the parties should have a full and complete understanding of what is being restrained. Indeed, from a practical standpoint, Rule 65(d) requires the Court to spell out any injunction in "reasonable detail" and not simply by reference to a separate document.[17] So even if Sysco had actual trade secrets—and it does not—Sysco's vague claims of "everything in the complaint" or any of the broad categories its counsel tried to claim in the email exchange between counsel would hardly suffice.

In fact, as the above cases indicate, sweeping definitions of alleged trade secrets like the ones Sysco is trying to offer up here have resulted in outright dismissals of lawsuits. For example, Sysco variously identifies its purported trade secrets as including "component design layouts, structural layouts, videos of acceptance tests, purchase contracts, various other contracts, and technical documents" and claims that "[t]he proprietary information in the aforementioned files included machine parts design layouts, structural drawings, machine parts test data, factory acceptance tests, in-site acceptance tests of the RDCs, and specific content recorded in technical and client purchasing documents." (Dkt. 1, ¶ 66.) Sysco's recitation of broad swaths of information include none of the clarity required for such a claim. Indeed, it is far less precise that the algorithm trade secret claimed and dismissed in *Trust Safe Pay.* WL 3974949 at *9-10.

---

[17] The specificity requirements of Fed. R. Civ. P. 65 "are not 'merely technical' but are 'designed to prevent uncertainty and confusion and to avoid' basing a 'contempt citation on a decree too vague to be understood.'" *NBA Props. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990), quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). This is true for injunctive relief concerning trade secrets. *Patriot Homes, Inc. v. Forest River Housing, Inc.*, 512 F.3d 412, 415 (7th Cir. 2008) (vacating a preliminary injunction because it failed to define plaintiff's "trade secrets" with specificity).

Quite frankly, some of Sysco's trade secret claims are void on their face. For example, Sysco claims that illustrations "are copyrighted and comprise Sysco's Trade Secrets" and later claims "Sysco's stolen Trade Secrets included Sysco's Copyrighted Works." (Dkt. 5, pp. 6, 15.) This is wrong as a matter of law, as discussed above. To obtain registration in the United States, Sysco was required to submit deposit copies, which are public documents. See *KEMA,* 658 F. Supp.2d at 1031. But beyond that, it stuck those same drawings into the Complaint before this Court and the one in North Carolina. Nothing in either case was filed under seal; all of it is public record and none of it is secret. No secret, no trade secret. *CVD, Inc.*, 769 F.2d at 850.

### 2.    Sysco has no basis for its statements about Taiwanese law.

In both its presentation to this Court and in its memorandum, Sysco unequivocally represented to this Court that the former Sysco employees "…each had nondisclosure obligations under Taiwanese law." (Dkt. No. 5 at 5; Ex. F, 11/16/22 Tr. at 19:5-20.) Sysco, however, has no evidence to back up that representation. At this point, when it comes to evidence, Sysco should not be given a pass. After more than a year and visits to three courts in multiple jurisdictions, Sysco should be required to properly marshal its evidence. Yet, its sole support for its lawyer's statement (who did not indicate whether he speaks Chinese) is that it is supported by an untranslated Chinese opinion. (Dkt. 1., ¶ 51, Dkt. 1-30.) Although Fed. R. Civ. P. 44.1 gives a court some latitude in determining foreign law, nothing in the rule suggests that a lawyer can simply make an unconditional statement without further elaboration. Cymtek is entitled to much more than that before this Court further restrains its competition in the United States.

Even if the Court were to accept the unequivocal statement as true, it raises any number of questions. Sysco just argues that "the obligation of nondisclosure" is one of an "auxiliary obligations" whatever that means. Nondisclosure of what? Everything and anything the employee ever learned, witnessed, read or experienced at a job? If Taiwanese law is anything

like U.S. law, an employee would need to have reason to know something was confidential. There is no evidence that any of the materials Cymtek employees were alleged to have taken were labelled "confidential" or "secret." And, indeed, Cymtek's evidence shows just the opposite. (Ex. A, Wang Decl., ¶¶ 15-18.) The fact that various people in various departments may not have had access to other departments' materials also doesn't make them secret.

Cymtek also disputes Sysco's unsupported claims regarding Taiwanese law. As explained in the Declaration of Vanessa Weng (the "Weng Declaration"), a Taiwanese lawyer fluent in both English and Chinese, who also passed the New York State bar exam (¶¶ 2-3), the referenced opinion is from an unrelated employment case and not binding on any other courts. (Ex. K, Weng Decl., ¶¶ 6-10). Trade secrets are not at issue in the case and any reference to trade secrets is dictum at best. In addition, based on her training and experience, Ms. Weng discusses Taiwanese trade secret law in detail, including the fact that under Taiwan law, trade secret protections only protect confidential information that is clearly designated, and explains how, in the employment context (much like in the United States), such protections exist only if set forth in nondisclosure agreements or a nondisclosure provision entered into as part of an employee's employment. (*Id.*, ¶¶ 12-13).

Not only does Sysco fail to provide any evidence that would comply with the trade secret requirement, Eric Wang explains how Sysco's historical lax approach meant it never tried to protect its business information (whether it believed it be a trade secret or otherwise) and also how he was never subject to an NDA or employment contract containing any protections. (Ex. A, Wang Decl., ¶¶ 11-18, 29-30.) On top of that, he makes clear that he did not rely on Sysco material to create Cymtek products and provides objective evidence that there is nothing secret or proprietary about the Sysco machinery. (*Id.*, ¶¶ 9-10, 27-28, 39.)

17

Cymtek acknowledges that Ms. Weng represents Cymtek and Mr. Wang is a Cymtek employee. But their testimony is at least as credible as what Sysco has offered, if not greater, given the detail of their explanations to the specific points raised by Sysco. Thus, Sysco's lack of evidence not only shows a lack of likely success, but justifies dismissal on the merits.

**B.      Sysco Has Not, And Cannot, Establish That It Will Suffer Irreparable Harm.**

Despite the significance of irreparable harm to the entry of a TRO or preliminary injunction, Sysco gives it only passing recognition essentially claiming that if in can show likelihood of success on the merits, that also translates into a win on irreparable harm. (Dkt. 5, pp. 16.) That is not quite accurate. In *Voice of the Arab World v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 34 (1st Cir. 2011), the First Circuit said the Supreme Court's decision in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) called the presumption into question. *See also, Bassett v. Jensen*, 2019 WL 5457771, *1 (D. Mass., 10/24/2019) (Saris, C.J.) (irreparable harm presumption "no longer the law").

**1.      Sysco's delay belies irreparable harm.**

In *Voice of the Arab World*, the First Circuit concluded that a trademark preliminary injunction was "subject to traditional equitable principles," as set forth by the Supreme Court in *eBay*. 645 F.3d at 34-35. It also found that a delay in seeking relief, bars any presumption of irreparable harm: "'[T]he failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" 645 F.3d at 35 (quoting *Tough Traveler Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)). *See also Media3 Technologies, LLC v. Mail Abuse Prevention System, LLC,* 2001 WL 92389, *9 (D. Mass. Jan. 2, 2001) (delay of six months rendered claimed harm not irreparable).

Sysco's Complaint makes it clear that it knew about the alleged wrongdoing as early as October 1, 2021, but waited until March 2022 to file anything against Cymtek. (Dkt. 1, ¶ 84.) Even after Sysco obtained the *Ex Parte* Taiwanese Order, Sysco failed to seek enforcement of that order in Taiwan, rendering it unenforceable. (Dkt. 1, ¶¶ 96-97 and Dkt. 1-44 ; *see also* Ex. A, Wang Decl., ¶ 40.) Obviously, if it was truly concerned about harm, Sysco would have acted promptly. While it is true that Sysco unsuccessfully sought identical relief in federal court in North Carolina, it did not file that claim until August 2022. Thus, it remains that Sysco chose to wait over a year before coming to this Court, and more than seven months after it got the now unenforceable *Ex Parte* Taiwanese Order upon which it relied. Under such circumstances, Sysco's own actions demonstrate it has no irreparable harm.

### 2.    Any harm can be quantified.

By definition, irreparable harm means a harm that cannot be compensated with monetary damages. As the First Circuit has directed,  "… 'traditional economic damages can be remedied by compensatory awards, and thus do not rise to the level of being irreparable.'" *NACM-New England, Inc.*, 927 F.3d 1, 5 (1st Cir. 2019); *see also Vaqueria Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 485 (1st Cir. 2009); *Puerto Rico Hosp. Supply, Inc. v. Boston Scientific Corp.*, 426 F.3d 503, 507 (1st Cir. 2005). Moreover, that harm must be real, not speculative, as "[a] preliminary injunction should not issue except to prevent a real threat of harm." *Matos ex rel. Matos v. Clinton School Dist.*, 367 F.3d 68, 73 (1st Cir. 2004); *see also Public Service Co. of New Hampshire v. Town of West Newbury*, 835 F.2d 380, 383 (1st Cir. 1987) ("Speculative injury does not constitute a showing of irreparable harm.") This is because "[p]reliminary injunctions are strong medicine, and they should not issue merely to calm the imaginings of the movant." *Matos ex rel. Matos*, 367 F.3d at 73.

As discussed above, as much as Sysco might want to refer to Cymtek's products as "misappropriated products" as it did during its *ex parte* hearing before this Court, nothing about the products themselves is "misappropriated." Rather, Sysco appears to be claiming—erroneously—that Cymtek used its technology to build its products. But the mere presence of the products hardly results in the disclosure of Sysco's alleged (and unidentified) trade secrets any more than the presence of a Sysco product would do so. Sysco also tries to claim without any evidence that Cymtek took or might take its customers, but completely fails to explain why such a loss is not likewise quantifiable, let alone provide evidence of it. (Dkt. 5 at 17.) So, at best for Sysco, it has a traditional damages case and no possibility of irreparable harm.

### C. The Balance Of The Equities Favors Cymtek.

As discussed above, the TRO not only caused Cymtek to lose revenue, but caused a new customer to cease all communications with Cymtek. It is not unreasonable to expect similar treatment from others as Sysco's uses this Court's order to thwart Cymtek's fledgling relationships with its customers. It is doubtful whether that bell can be unrung, but one thing is certain: permitting this improper restraint to continue will only damage a start-up company's reputation in the market.

### D. Continuing The Injunction Is Not In The Public Interest.

The public benefits from competition. There is no basis for destroying a competitor on this record. The TRO should be dissolved.

Dated: December 19, 2022

Respectfully submitted,

CYMTEK SOLUTIONS, INC.

By its attorneys

*/s/*  Kevin Tottis
Barbara A. Fiacco (BBO #633618)
Allison L. Anderson (BBO #687662)
Foley Hoag LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000 (telephone)
(617) 832-7000 (facsimile)
BFiacco@Foleyhoag.com
Alanderson@foleyhoag.com

Kevin Tottis (admitted Pro Hac Vice)
Max Stein (admitted Pro Hac Vice)
TottisLaw
401 N. Michigan Avenue
Suite 530
Chicago, IL 60611
(312) 527-1400 (telephone)
(312) 589-7192 (facsimile)
ktottis@tottislaw.com
mstein@tottislaw.com